UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
FILED

JUL 26 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

WINK, INC. d/b/a Wink Salon,

      Plaintiff,

v.                         Case No.: 2:10cv450

WINK THREADING STUDIO, INC.,

      Defendant.

## OPINION AND ORDER

Before the Court are the Plaintiff's Motion to Disqualify Counsel for Defendant (ECF No. 60), filed by plaintiff Wink, Inc. d/b/a Wink Salon on June 6, 2011, and the Motion to Withdraw as Counsel (ECF No. 62), filed by counsel for defendant Wink Threading Studio, Inc. on June 14, 2011. The Court held a hearing on these motions on June 28, 2011. Duncan G. Byers, Esq., represented the plaintiff at the hearing, and Joseph R. DelMaster, Esq., and Jeffrey C. Flax, Esq., represented the defendant at the hearing. Hamsimran Kaur, president and owner of the defendant corporation, was also in attendance at the hearing. The official court reporter was Heidi Jeffreys.

## I. BACKGROUND

This is a trademark infringement case. One of the key issues in dispute is whether infringement by the defendant was willful. The defendant relies on an "advice of counsel" defense with respect to this issue.

On June 6, 2011, the plaintiff moved to disqualify both lead and local counsel for the defendant on the ground that both attorneys are subject to a non-waivable conflict of interest due to concurrent representation of the defendant and Charles Payne, the defendant's former attorney.

Payne was engaged by the defendant in 2010 to counsel it on intellectual property matters and potential franchising of its eyebrow threading business.[1]  In April 2010, Payne met with Harsimran Kaur, president and owner of the defendant corporation, and Daniel Singh, Kaur's father and a business consultant for the defendant, to discuss these areas of concern. On June 23, 2010, Payne submitted an application to the United States Patent and Trademark Office on Kaur's behalf, seeking to trademark the WINK mark.

The plaintiff filed its complaint in this matter on September 9, 2010.  The defendant received notice of the complaint and a letter from plaintiff's counsel demanding that it stop using the WINK name on September 11, 2010.  Shortly thereafter, the defendant ended its relationship with Payne and retained Joseph R. DelMaster to represent it in this litigation.

---

[1] In considering these competing motions to disqualify and to withdraw, the Court relies on the factual representations of counsel for both parties, both at hearing and in their motion papers, and on documents submitted in support of the plaintiff's motion.  Although defense counsel do not concede that there is a conflict of interest, the pertinent facts are not in dispute.

DelMaster, an out-of-state attorney, associated with Jeffrey C. Flax to serve as local counsel.

On October 4, 2010, the United States Patent and Trademark Office issued an Office Action refusing to register the WINK mark sought by Kaur due to likelihood of confusion with the plaintiff's previously registered mark, WINK SALON.

On October 20, 2010, DelMaster began corresponding with plaintiff's counsel, Duncan G. Byers, regarding this litigation. On October 28, 2010, the defendant waived formal service of the complaint. On December 23, 2010, the defendant filed its answer to the complaint, by which DelMaster and Flax entered their appearance in this case.

On March 2, 2011, the plaintiff subpoenaed documents from non-party Payne regarding trademark searches he conducted on behalf of, and legal advice provided to, the defendant. On March 14, 2011, DelMaster produced certain of the defendant's client files he had received from Payne, as well as a privilege log identifying four documents as to which attorney-client privilege was asserted. Later that same day, Byers corresponded with DelMaster and Payne, asserting that the subpoena required Payne to produce documents rather than DelMaster. Payne's response identified the documents produced as client files belonging to the defendant, and therefore privilege determinations necessarily were made by current counsel for the

- 3 -

defendant, DelMaster. Later in the day, DelMaster sent an e-mail to Byers stating: "Now that we have clarified that Jeff Flax and I are acting as Mr. Payne's counsel for the purpose of the litigation, please note that all communication with him should proceed through either Jeff or me for the duration of the case." Pl.'s Br. in Supp. Ex. 13, ECF No. 61. On March 15, 2011, Payne replied to the e-mail chain, advising that: "What [DelMaster] said above is correct as far as I am concerned." Id. Ex. 14.

On May 18, 2011, Byers deposed Payne. In the deposition transcript, the Court reporter noted that DelMaster appeared "[o]n behalf of the Defendant." Id. Ex. 3, at 2. Other than Byers, DelMaster, and Payne, no one else was identified in attendance. See id. at 2-3. Payne confirmed at deposition that he was "currently being represented individually by Mr. DelMaster." Id. at 57. Payne confirmed that he had not discussed any actual or potential conflict of interest with DelMaster, nor had he signed a written conflict waiver. Id. at 57-58.

Substantively, Payne's deposition testimony conflicts with testimony by Singh and Kaur regarding Payne's advice to them with respect to their use and registration of the WINK mark. Payne testified that he advised Kaur and Singh that their use of the WINK mark was "problematic" due to the plaintiff's prior

registration and use of the WINK SALON mark.  Kaur and Singh testified that Payne did not inform them of any such problem with Kaur's trademark application, nor of the plaintiff's prior registration and use of the WINK SALON mark.

On May 19, 2011, Byers deposed Singh.  At the end of the deposition, Byers raised his concern that DelMaster's concurrent representation of Payne and the defendant implicated a potential conflict of interest.  On May 20, 2011, Byers had the first of several telephone conversations with state bar counsel regarding the potential conflict of interest.  Some of the later conversations were conference calls involving DelMaster and Flax as well.

Plaintiff's counsel further represented the motion papers that, on June 2, 2011, Payne confirmed that he was still being represented by DelMaster and Flax.

On June 14, 2011, in lieu of a substantive response to the motion to disqualify, DelMaster and Flax filed a motion to withdraw as counsel to the defendant.  In this motion, defense counsel moved to withdraw "without conceding in any way that said motion has any actual merit."  Br. in Supp. of Mot. to Withdraw 1, ECF No. 63.  Defense counsel did concede, however, that the defendant may be better served with new counsel without any taint of a conflict of interest.  Later that same day, the

- 5 -

plaintiff filed a response to the motion to withdraw, stating that it did not oppose the motion to withdraw. ECF No. 64.

When asked at hearing whether his attorney-client relationship with Payne had been affirmatively terminated, DelMaster responded obliquely that his relationship with Payne was "not an ongoing relationship," that he had no further tasks to perform for Payne, and that their relationship was "entirely tied up in discovery." DelMaster explained that, in the course of discovery, he and Flax undertook to represent Payne for the limited purpose of reviewing and producing the attorney's client files and defending his deposition, tasks which had been concluded. DelMaster further confirmed that he had not obtained written consent to the concurrent representation from either Payne or the defendant. He suggested, however, not only that he could obtain such written consent from both clients if necessary, but that the defendant would be willing go further and waive any malpractice claims it might have against Payne to resolve any conflict.

When asked the extent of his role in the representation, Flax responded that, as local counsel, he had a limited role in the litigation. He acknowledged, however, some substantive discussions with Payne in connection with an earlier hearing on the plaintiff's motion to compel the production of certain

documents from Payne initially withheld from production as privileged. See generally Order of May 9, 2011, ECF No. 49.

## II. ANALYSIS

The Court first considers the guidance of the Fourth Circuit:

> In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances "with hair-splitting nicety" but, in the proper exercise of its supervising power over the members of the bar and with the view of preventing "the appearance of impropriety," it is to resolve all doubts in favor of disqualification.

United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (citations omitted); see also Sanford v. Virginia, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009).

As this Court has previously observed:

> It is, of course, important in our system of justice that the parties be free to retain counsel of their choice. "However, this Court has held that the right of one to retain counsel of his choosing is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'" Accordingly, "[t]here must be a balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." Moreover, the party seeking disqualification has a high standard of proof to show that disqualification is warranted. These principles are well settled.

- 7 -

Sanford, 687 F. Supp. 2d at 602 (citations omitted) (quoting

Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724,

729 (E.D. Va. 1990) (citations omitted)).

> While, as the Fourth Circuit explained in
> Clarkson, the assessment to be made in a
> disqualification motion cannot be made with
> "hair-splitting nicety," it is nonetheless true
> that the asserted conflict must be a real one and
> not a hypothetical one or a fanciful one. Put
> another way, disqualification simply cannot be
> based on mere speculation that "a chain of events
> whose occurrence theoretically could lead counsel
> to act counter to his client's interests might in
> fact occur." The applicable rule requires
> disqualification when the independent
> professional judgment of the lawyer is likely to
> be affected. Accordingly, some stronger
> indicator than judicial intuition or surmise on
> the part of opposing counsel is necessary to
> warrant the "drastic step of disqualification of
> counsel."

Id. at 602-03 (citations omitted) (quoting Shaffer v. Farm

Fresh, Inc., 966 F.2d 142, 145-46 (4th Cir. 1992), and citing

Aetna Cas. & Surety Co. v. United States, 570 F.2d 1197, 1200-01

(4th Cir. 1978), and Richmond Hilton Assoc. v. City of Richmond,

690 F.2d 1086, 1089-90 (4th Cir. 1982)).

The Court notes that "the lawyer's duty of loyalty long has

precluded the representation of conflicting interests."

Chauffers, Teamsters and Helpers, Local No. 391 v. Terry, 494

U.S. 558, 586 (1990); see also Dyntel Corp. v. Ebner, 120 F.3d

488, 492 ("[U]nder Virginia law it is clear that a lawyer owes

his or her client a fiduciary duty."); Tessier, 731 F. Supp. at

733 (recognizing that an attorney has a duty of loyalty to his client).   This duty of loyalty is reflected in Rules 1.7 and Rule 1.9 of the Virginia Rules of Professional Conduct, which govern conflicts of interest with respect to current and former clients, respectively.   See generally Va. R. Prof'l Conduct 1.7 & cmts. [1], [6], [8]; Va. R. Prof'l Conduct 1.9 & cmt. [3].[2] The principles of confidentiality and the attorney-client privilege are also concerns implicated when an attorney undertakes to represent conflicting interests.   See generally Va. R. Prof'l Conduct 1.6; Va. R. Prof'l Conduct 1.7 cmt. [30].

Rule 1.7 of the Virginia Rules of Professional Conduct provides that:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.   A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . .
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if each affected client consents after consultation, and:

---

[2] Pursuant to Local Civil Rule 83.1(I), the ethical standard for the practice of law in civil cases in this Court is the Virginia Rules of Professional Conduct.   See Local Civil Rule 83.1(I); see also Sanford, 687 F. Supp. 2d at 601.

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) the consent from the client is memorialized in writing.

Va. R. Prof'l Conduct 1.7; see also Sanford, 687 F. Supp. 2d at 596, 601.

The conflict of interest at issue in this case arises under Rule 1.7(a)(2).[3] The concurrent representation of the defendant

---

[3] DelMaster has suggested that Payne is a former client and this conflict of interest is therefore properly governed by Rule 1.9 rather than Rule 1.7. But based on the representations of counsel and the documents submitted in support of the motion to disqualify, it appears that Payne is a current rather than former client of DelMaster and Flax. In his March 14, 2011 e-mail message, DelMaster identified himself and Flax as "Mr. Payne's counsel for the purpose of the litigation." Pl.'s Br. in Supp. Ex. 13, ECF No. 61. In his March 15, 2011 e-mail message, Payne confirmed that this was his understanding as well. Id. Ex. 14. When deposed on May 18, 2011, Payne testified, without qualification, that DelMaster was his attorney, representing him individually. See id. Ex. 3, at 57. As recent as June 2, 2011, Payne advised plaintiff's counsel that he was still being represented by DelMaster and Flax. Id. at 6. And at the hearing held on June 28, 2011, DelMaster was unable to clearly state that the attorney-client relationship with Payne had been terminated; DelMaster hedged instead, noting that he had no further tasks to perform for Payne and expressing his subjective impression that theirs was "not an ongoing relationship," and one which was "entirely tied up in discovery." On the whole, the facts presented to the Court, by proffer and by exhibit, suggest that DelMaster and Flax

- 10 -

and Payne by DelMaster and Flax clearly poses a significant risk

undertook to represent Payne for the duration of this litigation, which remains ongoing.

In any event, even if Payne is properly considered a former client, DelMaster and Flax would still owe him a residual duty of loyalty with respect to the subject of their past legal representation, and they would therefore still face a disqualifying conflict of interest. Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in <u>the same or a substantially related matter</u> in which that person's interests are <u>materially adverse</u> to the interests of the former client unless both the present and former client consent after consultation." Va. R. Prof'l Conduct 1.9(a) (emphasis added). Under Rule 1.9, absent consent by both the defendant and Payne after consultation, DelMaster and Flax would still be prohibited from representing the defendant in <u>this same matter</u> in which they represented Payne because the conflicting testimony of Singh and Kaur, on the one hand, and Payne, on the other, with respect to the advice he provided regarding the defendant's use and registration of the WINK mark, testimony which strongly suggests the existence of a malpractice claim against Payne. See <u>Touchcom, Inc. v. Bereskin & Parr</u>, 299 Fed. App'x 953 (Fed. Cir. 2008) (applying Virginia law) (disqualifying counsel for malpractice plaintiff who had previously represented malpractice defendants at deposition in underlying patent litigation against the malpractice plaintiff, and noting that Rule 1.9 "was designed not only to protect client confidences, but 'to establish broader standards of attorney loyalty.'") (quoting <u>Sharp v. Sharp</u>, No. 02-74, 2006 WL 3088067, at *25-*26 (Va. Cir. Ct. Oct. 26, 2006)).

Moreover, even if Rule 1.9 did provide the framework for analyzing whether DelMaster and Flax may have breached their duty of loyalty to Payne as a former client, Rule 1.7 continues to provide the framework for analyzing whether they may have breached their duty of loyalty to the defendant as a current client. See Va. R. Prof'l Conduct 1.7(a)(2) ("A concurrent conflict of interest exists if . . . there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a former client."). The disqualification of DelMaster and Flax in this case hinges not on whether they have a conflict of interest vis-à-vis a former client, but whether a conflict of interest materially limits their current representation of the defendant in the present litigation.

that the representation of one of these two clients will be materially limited by counsel's duty of loyalty to the other, particularly in light of the conflicting testimony of Singh and Kaur, on the one hand, and Payne, on the other, with respect to Payne's advice regarding the defendant's use and registration of the WINK mark. See Va. R. Prof'l Conduct 1.7 cmt. [23] ("Simultaneous representation of parties whose interests in litigation may conflict . . . is governed by paragraph (a)(2). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony . . . .")

This is well illustrated by DelMaster's suggestion, in open court, that his client may be willing to waive any malpractice claim it may have against Payne if necessary to eliminate the conflict of interest. This proposed waiver goes right to the heart of the issue. DelMaster and Flax owe a duty of loyalty to both the defendant and to Payne. It is not permissible for DelMaster or Flax to advise the defendant regarding the assertion or waiver of malpractice claims against Payne, who is also their client. Moreover, it is difficult to conceive of any way that counsel can effectively present an advice-of-counsel defense in this case, where the testimony of Payne and the defendant's corporate representatives directly contradict one another, without disadvantaging Payne with respect to potential malpractice or disciplinary action that may result from this

litigation, or without impairing his professional reputation. Conversely, it is difficult to conceive of any way counsel can effectively avoid or mitigate the potential harm to Payne without undermining the defendant's advice-of-counsel defense.

On this record, such as it is, the Court is satisfied that that the asserted conflict of interest is a real one, not merely hypothetical or fanciful. *See* Sanford, 687 F. Supp. 2d at 602-03. But pursuant to Rule 1.7(b), a representation may be permissible notwithstanding a concurrent conflict of interest where, *inter alia*, "each affected client consents after consultation, and . . . the consent from the client is memorialized in writing." Va. R. Prof'l Conduct 1.7(b). Nevertheless, despite ample opportunity to do so, DelMaster and Flax concede that they have not obtained written consent from either the defendant or Payne, and the little evidence that has been submitted to the Court on this motion suggests that there has been no meaningful consultation between defense counsel and their clients regarding this conflict in any event. *See* Pl.'s Br. in Supp. Ex. 2, at 122-23; *id.* Ex. 3, at 57-58.

In the Court's eyes, there is little doubt that DelMaster and Flax are conflicted and that neither the defendant nor Payne has consented in writing after consultation. The Fourth Circuit has instructed that all doubts be resolved in favor of disqualification. *See* Clarkson, 567 F.2d at 273 n.3.

- 13 -

Accordingly, the Court concludes that DelMaster and Flax must necessarily be disqualified.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court FINDS that both Joseph R. DelMaster and Jeffrey C. Flax have a disqualifying conflict of interest due to their concurrent representation of the defendant and Charles Payne, the defendant's former attorney. Plaintiff's Motion to Disqualify Counsel for Defendant (ECF No. 60) is GRANTED and both Joseph R. DelMaster and Jeffrey C. Flax are DISQUALIFIED from further representation of the defendant in this matter.

The Motion to Withdraw as Counsel (ECF No. 62), filed by DelMaster and Flax, is DENIED as MOOT.

The Court ORDERS that the stay imposed by the Court's Order of June 28, 2011 (ECF No. 71) is hereby VACATED.

The Court further ORDERS the defendant to promptly identify and retain substitute counsel, with such counsel to enter his or her appearance in this case within 21 days of the date of this Order.[4]  Upon the entry of appearance by substitute counsel for the defendant, counsel for both parties are DIRECTED to contact

---

[4] The Court notes that the defendant is a corporation, and a corporation is not permitted to appear <u>pro se</u> in federal court. <u>See</u> <u>Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 202-03 (1993); <u>Honour Technical Group, Inc. v. U.S.</u>, 326 Fed. App'x 141, 142 (4th Cir. 2009) (unpublished per curiam opinion).

the Magistrate Courtroom Deputies at (757) 222-7222 to schedule a settlement conference in this matter before Hon. Tommy E. Miller, United States Magistrate Judge.  Promptly thereafter, counsel for both parties are DIRECTED to contact Courtroom Deputy Lori Baxter at (757) 222-7244 to schedule a final pretrial conference and a jury trial in this matter before Hon. Robert G. Doumar, United States District Judge.

The Court further ORDERS Mr. Flax to promptly deliver a copy of this Order to the defendant upon his receipt of it.  Mr. Flax is DIRECTED to file a declaration certifying his delivery of this Order to the defendant, including the date and method of delivery.

IT IS SO ORDERED.

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 26, 2011